UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERALD J. DEMENNA, individually and d/b/a CHEM–CHEK CONSULTING,<br><br>                            Plaintiffs,<br>  – against –<br>BUCK SCIENTIFIC, INC., ROBERT J. ANDERSON, and ERIC ANDERSON,<br><br>                           Defendants. | **CIVIL ACTION**<br><br>CASE NO. 07 CV 6240 (LAP) |

# MEMORANDUM OF LAW
# IN SUPPORT OF
# PLAINTIFF'S APPLICATION FOR
# TEMPORARY RESTRAINING ORDER
# AND
# PRELIMINARY INJUNCTION

FISCHER PORTER & THOMAS, P.C.
*Attorneys for Plaintiff Gerald J. DeMenna*
440 Sylvan Avenue, Suite 130
Englewood Cliffs, New Jersey 07632-2700
Telephone:    (201) 569 – 5959

*Of Counsel:*
    Arthur L. Porter, Jr.

*On the Brief:*
    Joel J. Reinfeld
    Matthew L. Seldin

# TABLE OF CONTENTS

Table Of Contents .................................................................................................................. ii

Table Of Authorities ............................................................................................................. iii

Preliminary Statement ............................................................................................................ 1

Statement Of Facts ................................................................................................................. 2

Legal Argument ..................................................................................................................... 5

Point I
    Defendants Should Be Prohibited From Publising
    Any Additional Defamatory Statements Against The Plaintiff ............................................ 6

Point II
    Defendants Should Be Prohibited From Interfering
    With Plaintiff'S Contractual And Business Relations ........................................................ 9

Point III
    Defendants Should Be Prohibited From Continuing
    To Engange In Unfair Trade Practices Against The Plaintiff ............................................ 10

Conclusion ........................................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**

*Abrahams v. Young and Rubicam, Inc.*,
240 Conn. 300, 692 A.2d 709 (1997)...........................................................................10

*AroChem International, Inc. v. Buirkle*,
968 F.2d 266 (2d Cir. 1992)...........................................................................................6

*Boule v. Hutton*,
328 F.3d 84 (2d Cir. 2003).............................................................................................7

*Carvel Corporation v. Noonan*,
350 F.3d 6 (2d Cir. 2003)...............................................................................................9

*Cheshire Mortgage Service, Inc. v. Montes*,
223 Conn. 80, 612 A.2d 1130 (1992).........................................................................11

*Cweklinsky v. Mobil Chemical Company*,
364 F.3d 68 (2d Cir. 2004).............................................................................................8

*Dillon v. City of New York*,
704 N.Y.S.2d 1, 261 A.D.2d. 34 (1st Dept. 1999)........................................................7

*Excess Insurance Company Ltd. v. Factory Mutual Insurance Company*,
769 N.Y.S.2d 487, 2 A.D.3d 150 (1st Dept. 2003).......................................................6

*Fabri v. United Technologies Intern., Inc.*,
387 F.3d 109 (2d Cir. 2004)..................................................................................10, 11

*Foster v. Churchill*,
87 N.Y.2d 744, 642 N.Y.S. 583 (1996).........................................................................9

*Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*,
255 Conn. 20, 761 A.2d 1268 (2000)............................................................................9

*Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*,
596 F.2d 70 (2d Cir. 1979).............................................................................................6

*Liberman v. Gelstein*,
80 N.Y.2d 429, 590 N.Y.S.2d 857 (1992).....................................................................7

*Marcus v. AT&T Corp.*,
138 F.3d 46 (2d Cir. 1998)...........................................................................................10

*Matter of Allstate Insurance Company*,
81 N.Y.2d 219, 527 N.Y.S.2d 904 (1993).....................................................................6

*Meloff v. New York Life Insurance Company*,
240 F.3d 138 (2d Cir. 2001)...........................................................................................7

*Miller v. Miller*,
22 N.Y.2d 12, 290 N.Y.S.2d 734 (1968).......................................................................6

*Moriarty v. Lippe*,
   162 Conn. 371, 294 A.2d 326 (1972)......................................................................................8

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
   85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995)..............................................................................10

*Peters v. Baldwin Union Free School District*,
   320 F.3d 164 (2d Cir. 2003)...................................................................................................7

*Polymer Technology Corporation v. Mimran*,
   37 F.3d 74 (2d. Cir. 1994)......................................................................................................5

*Posner v. Sprint/United Management Company*,
   478 F.Supp.2d. 550 (S.D.N.Y. 2007).....................................................................................7

*Roberts v. Atlantic Recording Corporation*,
   892 F.Supp. 83 (S.D.N.Y. 1995)............................................................................................5

*Securitron Magnalock Corp. v. Schnabolk*,
   65 F.3d 256 (2d Cir. 1995).....................................................................................................7

*Semmes Motors, Inc. v. Ford Motor Company*,
   429 F.2d 1197 (2d Cir. 1970).................................................................................................6

*Small v. Lorillard Tobacco Company, Inc.*,
   94 N.Y.2d 43, 698 N.Y.S.2d 615 (1999)..............................................................................10

*State Street Bank and Trust Company v. Inversiones Errazuriz Limitada*,
   374 F.3d 158 (2d Cir. 2004)...................................................................................................9

*Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*,
   60 F.3d 27 (2d Cir. 1995)...................................................................................................5, 6

*Wall v. CSX Transportation, Inc.*,
   471 F.3d 410 (2d Cir. 2006)...................................................................................................6

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*,
   460 F.3d 281 (2d Cir. 2006)...................................................................................................9

*Xelus, Inc. v. Servigistics, Inc.*,
   371 F.Supp.2d 387 (W.D.N.Y. 2005) ....................................................................................8

**STATUTES**

C.G.S.A. § 42-110...................................................................................................................10, 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 65...........................................................................................................................5

## **PRELIMINARY STATEMENT**

Plaintiff Gerald DeMenna is an analytical scientist who had worked as an independent contractor helping to market scientific equipment for Buck Scientific, and was terminated after he brought a suspicious purchase to the attention of the Department of Homeland Security. Upon firing DeMenna, Defendants Robert J. Anderson and Eric Anderson assaulted him, and unlawfully prevented him from retrieving his personal property. Defendants then contacted DeMenna's other business contacts for whom DeMenna had worked as a consultant, alleging that DeMenna had stolen from Buck Scientific and diverted its customers. When Defendants returned DeMenna's computer days later, it was missing files and DeMenna's personal email messages had been forwarded to defendant Eric Anderson's e-mail address.

Defendants were aware that DeMenna had business dealings with the individuals they contacted. They were aware that the allegations they spread were likely to destroy his ability to continue in business as a consultant. If they continue on their current course of action, DeMenna will be in danger of losing his reputation, his credibility, and as a result, his livelihood. These are damages that a monetary award cannot adequately repair. Accordingly, Plaintiff requests that this court issue a temporary restraining order and a preliminary injunction to prevent Defendants from causing any further damage to his business.

## STATEMENT OF FACTS

Plaintiff is an analytical chemist with 32 years of experience in his field, as well as a chemistry professor at Sacred Heart University in Fairfield, Connecticut. In 1989, Plaintiff started Chem-Chek Consulting, a sole proprietorship that analyzes the chemical composition of various substances for its customers. In addition to his work with Chem–Chek, Plaintiff created materials to help promote science education in the schools. Beginning in 1990, Plaintiff began wearing a tie-died lab coat during his presentations at schools, and, later, while marketing Buck Scientific products.

In 1991, Plaintiff made contact with Buck Scientific, a company that manufactures instruments used to analyze the chemical composition of substances. During the late 1980's or early 1990's, either Defendant Robert Anderson or Roy Mirchandani of Buck Scientific contacted Plaintiff to create protocols to measure chemical compositions. In 1992, Buck Scientific asked Plaintiff to market its products by visiting customers with sales representatives and demonstrating products. Buck Scientific paid Plaintiff a flat weekly fee based on about twelve hours of work.

At the same time, Plaintiff continued to work through his own company with other businesses where he would create protocols and help broker deals for equipment. Buck Scientific was aware of this at all times. Over the past fifteen (15) years, Plaintiff has devoted increasing time to his employment with Buck Scientific; his hours have increased to at least forty (40) hours per week and he traveled to conferences and conventions to market its products while wearing the tie-die lab coat for which he became known. His compensation has increased to .01 percent of sales and reimbursement of his travel expenses, although often times he was forced to pay such expenses on his own, because defendant Robert Anderson would not authorize the total amount expended.

In December, 2006, an inside sales person contacted Plaintiff concerning the sale of four instruments worth One Hundred and Thirty Thousand ($ 130,000) Dollars. The amount of this sale makes it a large transaction for Buck Scientific. The salesperson could not specifically identify the end user of the equipment, which Plaintiff understood was required under law. The end user was identified as a Dr. Akid who reportedly wanted the equipment for a university in Dubai. Plaintiff and the salesperson were unable to locate the university, and through researched discovered that the end user "practiced" in Tehran, Iran. Plaintiff brought this to the attention of defendant Robert Anderson and even prepared a draft for his signature to the government, concerning the shipment. When none of the Defendants took any action with regard to the shipment, Dr. DeMenna contacted the Department of Homeland Security to protect the company. An agent visited the company and later arranged to place a tracking device on the shipment. Although the company has been paid for the purchase, neither Plaintiff nor the salesperson has received their commissions for the sale.

On Saturday, June 16, 2007, Plaintiff learned that Buck Scientific had posted an online job listing describing Plaintiff's position. When Plaintiff emailed Defendants to inquire about the listing, he received no response until June 18, 2007 when Defendant Robert Anderson called him into his office. Defendants Robert and Eric Anderson were present. Robert Anderson stated that he was "tired of all [his] extracurricular activities" and accused plaintiff of "stealing from the company." Plaintiff denied the accusations, and Defendants terminated him, telling him "get the hell out of here." Plaintiff returned to his cubicle to pick up his two notebook computers that Plaintiff used to teach his class at Sacred Heart University, personal papers, and a cellular phone that belonged to the company but contained personal information in its memory.

As Plaintiff shut down the computers, Defendant Eric Anderson pushed Plaintiff in the chest. When Plaintiff again tried to shut down the computers, Robert Anderson wrenched his shoulder, then dragged him out the door and told him "you'll get your stuff when we get our demo equipment." At all times, Defendants were aware that the demo equipment were located at Sacred Heart, a personal lab in the Bronx, N.Y., and at a warehouse in Piscataway, N.J. As Plaintiff tried to leave, Defendant Robert Anderson took his car keys and instructed him to use the company truck to "go get all of my s__t."

On Tuesday, June 19, 2007, as Plaintiff was picking up the demo equipment to return to Buck Scientific, he contacted the Norwalk Police Department concerning the actions of Defendants. Plaintiff met with an officer at Norwalk Police Department headquarters where the officer entered an incident report and accompanied Plaintiff back to Buck Scientific. When Plaintiff and the officer returned to Buck Scientific, the officer told Defendant that since Plaintiff had returned all of his materials, Defendant should return Plaintiff's materials. Defendant Robert Anderson refused. The officer threatened to place Robert Anderson under arrest. The officer then escorted Plaintiff to his cubicle where he gathered his belongings except the memory card from the cellular phone with Plaintiff's personal information. While returning home, an employee of Edu-Chem called to inform Plaintiff that she had received a letter stating that Plaintiff had been fired for diversion of customers and theft. Defendants had also sent similar emails to other sales people and equipment manufacturers.

On Wednesday, June 20, 2007, Plaintiff discovered that several programs and personal data had been deleted from his computer, and all email had been forwarded to "Eric@bucksci.com." on the Monday night when Defendants terminated him.

4

On Monday, June 25, 2007, personal customers began contacting Defendant regarding emails they had recieved from Defendant Eric Anderson stating that Plaintiff had stolen materials. International customers sent email to Plaintiff, carbon copied to Eric Anderson, stating that they did not believe the accusations. On June 26, 2007, Plaintiff received a call from Measure Net Technology, a customer in Ohio, which indicated that it may discontinue doing business with Plaintiff based on the negative statements from Buck Scientific.

## LEGAL ARGUMENT

A party seeking a temporary restraining order pursuant to Fed. R. Civ. P. 65(b) must establish: "irreparable harm, and either (1) a likelihood of success on the merits of its case or (2) sufficiently serious questions going to the merits to make them fair ground for litigation and balance of hardships tipping decidedly in its favor." *Roberts v. Atlantic Recording Corporation*, 892 F.Supp. 83, 86 (S.D.N.Y. 1995) (citing *Polymer Technology Corp. v. Mimran*, 37 F.3d 74 (2d. Cir. 1994)). The standard for a preliminary injunction is the same. See *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33 (2d Cir. 1995). Plaintiff meets all of the requirements for both a temporary restraining order and a preliminary injunction. The Defendants' refusal to return Plaintiff's property, their efforts to slander Plaintiff, their unfair trade practices, and deliberate interference with Plaintiff's business all threaten to cause irreparable harm to Plaintiff's reputation and thus his livelihood. Plaintiff can establish a strong likelihood of success on the merits of his claim. Alternatively, the claims present questions that are appropriate for litigation, and a temporary restraining order would cause no hardship to Defendants.

The Second Circuit has held that "irreparable injury means injury for which a monetary award cannot be adequate compensation and that where money damages is adequate compensation a

5

preliminary injunction will not issue." *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). Additionally, the injury may not be "remote or speculative but actual and imminent . . . ." *Tom Doherty Assocs.*, 60 F.3d at 37. The Second Circuit has also held that "the right to continue a business in which [plaintiffs] had engaged for twenty years" is not measurable only in monetary terms, and thus the threat of losing one's business constitutes irreparable harm for purposes of a temporary restraining order. *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir. 1970).

As a diversity action, the court applies the choice of law rules that apply in the state where the court sits. See *AroChem International, Inc. v. Buirkle*, 968 F.2d 266, 269-70 (2d Cir. 1992). The first step in New York's choice of law analysis is "to determine whether there is an actual conflict between the laws of the jurisdictions involved." *Matter of Allstate Ins. Co.*, 81 N.Y.2d 219, 223 (1993). The court must then determine which jurisdiction has "the greatest interest in the litigation . . . ." *Miller v. Miller*, 22 N.Y.2d 12, 15, 290 N.Y.S.2d 734, 737 (1968). However, the New York courts have held that where there is no conflict of law, New York law will apply. See, *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 422 (2d Cir. 2006) (citing *Excess Ins. Co. Ltd. v. Factory Mut. Ins. Co.*, 2 A.D.3d 150, 151, 769 N.Y.S.2d 487, 489 (N.Y.A.D. 1 Dept. 2003)).

## POINT I

### DEFENDANTS SHOULD BE PROHIBITED FROM PUBLISHING ANY ADDITIONAL DEFAMATORY STATEMENTS AGAINST THE PLAINTIFF

Defendant's statements alleging that Plaintiff was fired for diverting customers and theft constituting libel and slander threaten irreparable harm to Plaintiff's business. To establish a prima facie libel claim, a movant must prove five elements: "(1) a written defamatory statement of fact

6

regarding the plaintiff; (2) published to a third party by the defendant; (3) defendant's fault, varying in degree depending on whether plaintiff is a private or public party; (4) falsity of the defamatory statement; and (5) injury to plaintiff." *Posner v. Sprint/United Management Co.*, 478 F.Supp.2d. 550, 560 (S.D.N.Y. 2007) (quoting *Meloff v. New York Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001)). "Under New York law, the elements of a defamation claim are 'a false statement, published without privilege or authorization to a third party, constituting fault . . . and it must either cause special harm or constitute defamation per se'." *Peters v. Baldwin Union Free School Dist.*, 320 F.3d 164, 169 (2d Cir. 2003) (quoting *Dillon v. City of New York*, 261 A.D.2d. 34, 38, 704 N.Y.S.2d 1, 5 (N.Y.A.D. 1 Dept. 1999)). Furthermore, the Second Circuit has recognized New York law that identifies defamation per se and presumed damages "where a statement impugns 'the basic integrity' of a business . . . ." *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003); see also, *Liberman v. Gelstein*, 80 N.Y.2d 429, 435, 590 N.Y.S.2d 857, 860-61 (1992) (finding defamation per se where statements "tend to injure another in his or her trade, business or profession. . . .").

The Second Circuit has upheld a jury finding of defamation in a case where a lock manufacturer made false statements concerning a competitor to a regulatory agency. *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 265 (2d Cir. 1995). In *Securitron*, the court cited the effect of the statements on plaintiff's customers in finding that damages ensued: "The evidence demonstrated that specific customers, such as the Newark Board of Education and HHC, had stopped dealing with Securitron." Id. at 265. Similarly, the Defendants' statements threaten to cause irreversible damage to his business as evidenced by the response from his clients. Such damage to his reputation jeopardizes Plaintiff's livelihood. Only a temporary restraining order and preliminary injunction would prevent such an outcome.

7

Similarly, Connecticut law sets forth elements substantially similar to those utilized in New York: "To succeed on a defamation claim in Connecticut, a plaintiff must show that: (1) defendant made a false statement about plaintiff; (2) defendant published the statement to a third party; and (3) plaintiff's reputation was thereby injured." *Cweklinsky v. Mobil Chemical Co.*, 364 F.3d 68, 73 (2d Cir. 2004). Per se defamation may occur where the alleged defamatory statement "charges improper conduct or lack of skill or integrity in one's profession and is of such a nature that it is calculated to cause injury to one in his profession." *Moriarty v. Lippe*, 162 Conn. 371, 386, 294 A.2d 326, 334 (1972). Defendants' statements, alleging theft and diversion of clients, charge improper conduct and were clearly calculated to cause injury as the statements can serve no benefit to the Defendant.

Where a defendant company contacted the plaintiff company's business partners making allegedly defamatory statements that threatened the plaintiff's business relationships, irreparable harm was sufficient to justify a preliminary injunction. See, *Xelus, Inc. v. Servigistics, Inc.*, 371 F.Supp.2d 387, 390 (W.D.N.Y. 2005). Furthermore, in considering whether the harm could be rectified by an award of damages, the court in *Xelus, Inc.* stated: "Although the damages flowing from loss of a given contract may in some instances be calculable, such a calculation might be much more difficult where the contractual relationship would have lasted for many years . . . or where the contracting parties could reasonably have been expected to maintain a long-term relationship." Id. As the Defendants' statements threaten to damage Plaintiffs' ongoing business relationships, a preliminary injunction is appropriate.

Because Defendants' statements threaten to injure Plaintiff's business, they constitute per se defamation under both New York and Connecticut law. Accordingly, a temporary restraining order

8

and a preliminary injunction preventing Defendants from making further defamatory statements to Plaintiff's business associates is necessary to prevent further damage to Plaintiff's business.

## POINT II

### DEFENDANTS SHOULD BE PROHIBITED FROM INTERFERING WITH PLAINTIFF'S CONTRACTUAL AND BUSINESS RELATIONS

The Second Circuit has recognized that New York defines tortious interference with a contractual relation as requiring "(1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach, and (4) damages." *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 460 F.3d 281, 285 (2d Cir. 2006) (citing *Foster v. Churchill*, 87 N.Y.2d 744, 749-50, 642 N.Y.S. 583, 586 (1996)). In the absence of a contractual relationship, New York allows a party to bring a claim for interference with business relations, provided that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 171 (2d Cir. 2004) (citing *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003)).

> Likewise, Connecticut recognizes a claim of tortious interference:
>
> It is well established that the elements of a claim for tortious interference with business expectancies are: (1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss.

*Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 27, 761 A.2d 1268, 1273 (2000).

Under both New York and Connecticut law, Defendant's contact with Plaintiff's clients constitute interference with a contractual relation, or alternatively, interference with a business relation. Defendants were aware of the relationships that existed between Plaintiff and the parties that Defendant contacted, and that contact undermined Plaintiff, thus damaging his relationship with those clients. Based on the potential for greater harm to Plaintiff's business and reputation, a temporary restraining order and preliminary injunction are necessary to prevent any further damages.

## POINT III

### DEFENDANTS SHOULD BE PROHIBITED FROM CONTINUING TO ENGANGE IN UNFAIR TRADE PRACTICES AGAINST THE PLAINTIFF

Defendants' unfair trade practices also threaten to cause irreparable harm. "To state a claim under the New York deceptive acts statute, a plaintiff must allege a material deceptive act or practice directed to consumers that caused actual harm." *Marcus v. AT&T Corp.*, 138 F.3d 46, 63-64 (2d Cir. 1998); see also; *Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 55, 698 N.Y.S.2d 615, 620 (1999); and, *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 533 (1995).

Connecticut provides a statutory prohibition on unfair trade practices that bars "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." C.G.S.A. § 42-110b. To establish a cause of action, a plaintiff must show that the defendant "engaged in a prohibited act and that, 'as a result of' this act, the plaintiff suffered an injury." *Abrahams v. Young and Rubicam, Inc.*, 240 Conn. 300, 306, 692 A.2d 709, 712 (1997). The Second Circuit has recognized that Connecticut's fair trade statute applies the Federal Trade

10

Commission's "cigarette rule" in determining whether an act constitutes unfair trade. *Fabri v. United Technologies Intern., Inc.*, 387 F.3d 109, 120 (2d Cir. 2004).

> The factors to be weighed under the cigarette rule are (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [ (competitors or other businessmen) ].

Id. (citing *Cheshire Mortgage Serv. Inc. v. Montes*, 223 Conn. 80, 612 A.2d 1130 (1992)). The Defendants' actions satisfy all three of these factors. Furthermore, the Connecticut Unfair Trade Practices Act allows the court broad discretion in awarding attorney fees. See, C.G.S.A. § 42-110(g); see also, *Fabri*, 387 F.3d at 128. Accordingly, Plaintiff requests that the court award attorney fees.

Defendants' use of Plaintiff's information and contact with Plaintiff's clients constitute unfair business practices that threaten irreparable harm. As such, a temporary restraining order and preliminary injunction preventing Defendants' further use of unfair practices are appropriate.

## CONCLUSION

For the forgoing reasons, this Court should issue an Order awarding Plaintiff a Temporary Restraining Order and Preliminary Injunction prohibiting Defendants from publishing any further defamatory statements concerning the Plaintiff, enjoining the Defendants from interfering in Plaintiff's existing and/or prospective business relationships, and prohibiting the Defendants from utilizing the Plaintiff's personal documents and information.

Dated: July 5, 2007

                                          FISCHER PORTER & THOMAS, P.C.
                                          *Attorneys for Plaintiff Gerald J, DeMenna*

By: _____
            Joel J. Reinfeld (JJR 0176)
440 Sylvan Avenue, Suite 130
Englewood Cliffs, New Jersey 07632-2700
Telephone:    (201) 569 – 5959

12

P:\DeMenna, Jerry\Pleadings\MOL in Support of DeMenna OSC for TRO.doc