UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERALD J. DEMENNA, individually and d/b/a CHEM-CHEK CONSULTING,<br><br>                     Plaintiff,<br><br>– against –<br><br>BUCK SCIENTIFIC, INC., ROBERT J. ANDERSON, and ERIC ANDERSON,<br><br>                     Defendants. | CIVIL ACTION<br><br>CASE NO. 07-CV6420 (LAP)<br><br>**AFFIDAVIT OF GERALD J. DEMENNA IN FURTHER SUPPORT OF PRELIMINARY INJUNCTION AND IN OPPOSITION TO CROSS-MOTION FOR PRELIMINARY INJUNCTION** |

STATE OF NEW JERSEY    )
                                   ) ss.
COUNTY OF BERGEN       )

        GERALD J. DeMENNA, being duly sworn, does hereby depose and say:

        1.    I am the Plaintiff in this action; as such, I am fully familiar with the facts and circumstances set forth herein. I am submitting this Affidavit in further support of my request for a Preliminary Injunction and in opposition to the Defendants' Motion for a Temporary Restraining Order.

        2.    It is inconceivable to me that the Defendants would not consent to my request for a Preliminary Injunction. I am simply seeking an Order that they do not disparage my good name and they don't use my personal proprietary information. The fact that they have chosen to file a frivolous Cross-Motion speaks volumes in this action.

        3.    My working arrangement with Buck Scientific has always been as an Independent Contractor with no written agreement regarding terms and no written agreement or contract of non-

competition. My obligation was to provide forty (40) hours of service in return for a weekly consulting fee and a percentage of sales commissions. I originally was contracted to be the Applications Lab Manager then, was also given a title and responsibilities of General Manager and was also appointed Secretary for the Company. My incentive was to make sales for Buck Scientific in order to increase my own commissions.

4. As the Court will see, contrary to the Defendants assertions to the contrary, I was clearly terminated for "sticking my nose" into the Akid transaction. As background, I would note that in the mid-1990's, I was interviewed by an Agent form the FBI New Haven Field Office regarding some Buck Scientific equipment that was found in Iraq after the first Gulf War. The Agent told several Buck Scientific sales personnel at the time, including me, to be aware of any questionable transactions occurring overseas.

5. The "customer list" alleged to be proprietary by Buck Scientific is merely an attempt to obfuscate the issue at hand. While the "list" does contain Buck customers, I have worked with virtually all of them independently. As mentioned above and, as Buck Scientific must candidly admit, I do not have a non-competition agreement or a non-solicitation agreement. As such, I am free to call on them.

6. As is stated in Eric Anderson's Affidavit, my job was to match the right equipment to the customer. If Buck Scientific did not manufacture it, there was no prohibition on me selling any other item. Additionally, the fact that my compensation increased significantly, attests to the fact that my efforts helped Buck Scientific grow.

7. The alleged "first incident of dishonesty", which actually occurred in 2002, was not anything dishonest at all. Buck Scientific's previous sales manager, Roy Mirchandani, had told me that I could use the Buck Scientific equipment in my possession "any way that I chose" because I

was underpaid at the time. Since I had an outstanding tax bill to the federal government in 2002, I leased a machine for $1,000.00 per month for six (6) months, which was the amount of the tax bill. I intended to sell the machine through Buck at the end of the Lease if the Client still wanted it. Unfortunately, the machine arrived damaged. When I explained the situation, Robert Anderson advanced me the $6,000.00 against Chem-Chek Products to be provided to Buck. I find it quite interesting that Buck is now not only trying to punish me for reporting them to DHS but for my trying to satisfy an obligation to another federal agency ("IRS").

8.  Eric Anderson is simply wrong regarding the Acid Distillation Unit. It is exclusively marketed in the United States by a company in Florida called Berghof America, which I believe to be the American distributor of Berghof itself.

9.  Regarding the amount of shows that I was attending, based upon the request of Buck Scientific salespeople, I attended the SAME shows in the Spring of 2007 as I have for the past decade. Additionally, Buck Scientific has compiled many years of sales statistics that show that my presence in the Buck Scientific Office in Norwalk, Connecticut to service customer needs, was proportional to the orders that were and are booked. It is entirely possible that sales "fell off" due to the fact that I had been forced to travel extensively by the Company and there was no experienced sales manager or salespeople left in Connecticut to manage the business while I was traveling.

10.  The statement in Eric Anderson's Affidavit regarding a comment by Steven Zakrewski, is unabashed hearsay. I have no knowledge of any communications with a Dr. Barry Friedman of The Ohio State University. My involvement with The Ohio State University involves stopping in the University to present my Independent FUN-SCI Workshop and exhibit a variety of Scientific Instrument products. This was done during the first week of April, 2007, after nine weeks of extensive international/domestic travel for Buck Scientific at Buck Scientific's request. The Lab

Manager at The Ohio State University, not Dr. Barry Friedman, was interested in a Techne-Jenway Spectrometer Model-6320B, which Buck Scientific did not carry. Buck only carried the Model-6300 and Model-6305 as shown on their website and price list.

11. The allegations contained in Paragraph 28 of Eric Anderson's Affidavit are prime examples of "wishing and hoping doesn't necessarily make it so". First of all, once again, the statement by Dr. Sullins cannot be challenged as it is clearly inadmissible hearsay. As an Independent Contractor, I provided technical support to anyone, who was willing to provide fair compensation for my services. I had originally provided support to EDU-CHEM Innovations in distributing complimentary instrumentation for the independent sales representatives to offer in addition to the products offered by Buck Scientific. These include some specific models of products from Independent OEN Manufacturers (other equipment manufacturers) that Buck Scientific chose not to carry as part of the distribution package from that vendor. Additionally, my proprietary FUN-SCIence Programs are available under limited license to anyone willing to pay for this intellectual property product. I provided them to Buck Scientific as a sellable product while working for them and also provide these materials for other companies such as MeasureNet technology of Ohio, Microspectral Sensors of Maine and EDU-CHEM Innovations of Florida.

12. Referring to Juniata College, Cornell and OSU "leads", the units quoted by EDU-CHEM Innovations were not available from Buck Scientific, which were a Scanning Colorimeter (Techne-Jenway Model-6310); a Chromatography-Mass Spectrometer (Acquisition Solutions-K Model -4500) and a Domed Lid Test Tube Holder Colorimeter (Techne-Jenway Model 6320-D).

13. The Boman incident is also a "red herring". Terry Boman, as did other Educators in the Alabama Science-Motion program, had purchased Buck Scientific equipment in the past and had purchased independent consultation services from my Company, Chem-Chek, to present Educational

Workshops that dealt with many types of equipment separate and apart from Buck Scientific, as well as many other suppliers of laboratory instrumentation, including Edu-Chem Innovations. This was not really a Buck Scientific "lead", as Ms. Boman was also a Chem-Check customer who reached out to me for guidance. Additionally, when you look at the entirety of the alleged "smoking gun" E-mail, which is annexed hereto as **Exhibit "A",** you can see that I was involved in promoting "some stuff management at Buck was not interested in promoting". The E-mail itself refers to "times are-a-changing at Buck...". In fact, it was common knowledge that Buck Scientific was going to be sold and/or acquired by a company in Massachusetts and, at this time, a Production Manager had already chosen to resign. Additionally, a number of our customers were highly dissatisfied with the lack of sales and technical support from Buck Scientific. The products carried by the Edu-Chem Innovations were products other than what Buck Scientific had to sell (e.g., either completely different products or specific models/versions of products from existing OEM's or other vendors). Furthermore, the fact that I quoted a lower price to Ms. Boman is of no significance. Ms. Boman had asked me to find materials at the lowest price possible. In order to keep her happy as a customer, I did so. It is silly to think that I am attempting to divert sales because if Buck made the sale, I would make more money. I would not be acting against my own economic self-interest.

14.  I find it incredibly interesting that Buck Scientific thinks it has to defend itself by slandering my good name. Buck Scientific did not just send these faxes and e-mails to vendors, it also sent it to all other sales representatives and slandering my name could repair their name. I do not understand how Buck Scientific's good name had been damaged to these sales representatives. Furthermore, it is interesting to note, that many of these faxes and e-mails were forwarded to me by the manufacturers/vendors, who candidly stated to me that they were aghast at the nature of these allegations as I had earned their trust and respect based upon many years helping them develop their

own product and marketability separate and apart from Buck Scientific. In reality, Buck Scientific had no such interest in repairing its reputation. Just like when Robert Anderson and Eric Anderson assaulted me, it is merely an attempt to demolish my career.

15. As far as my memory card is concerned, due to the value of my expertise, I was "on call" literally 24 hours a day and 7 days a week. I often received international telephone calls at early and late hours on weekends and from students and professors doing research, etc. I had used the "camera" feature of Treo PDA cell phone to take personal pictures of the rare gatherings of my family, the personal portraits of my extensive travels, my students at Sacred Heart University, etc. I also used the "calendar" feature to enter in and keep track of tremendous amount of future travel requirements as well as personal trips. There are airplane and hotel reservations with confirmation numbers, dates and times, locations, etc. Additionally, I used the "contact" feature to record my professional, business, academic, personal and family information, which contains e-mail addresses, physical addresses, birthdays and anniversaries, etc. I also used the "documents" area to sort files sent to me from my private AOL account. Not having access to this information is causing additional financial and emotional strain upon me, since this information is not readily available anywhere else and could not easily be recreated.

16. As mentioned above, Buck Scientific cannot restrict me from consulting with and/or selling products to any other customer or any of my prior customers. I have not taken advantage of any private, proprietary information of Buck nor intend to do so. Any customers on the "customer list" of Buck's are also long-standing customers of mine.

17. I find it incredible interesting that Eric Anderson felt the need to download my personal AOL E-mails. Once again, it evidences a concerted attempt to hurt me and my business. I do not think that the Court should condone same. Additionally, I have no reason to have "a decade"

of Robert Anderson's business correspondence. I do not believe it was found on my personal notebook computer but, if it was, it was clearly put there after the fact when the Defendants had sole access to it.

_____
GERALD J. DeMENNA

Sworn to before me
this 10TH day of August 2007.

_____
Notary Public

KELLI A SCERBO
Notary Public
State of New Jersey
My Commission Expires Jun 19, 2011

**EXHIBIT "A"**

-----Original Message-----
From: chemchek@aol.com [mailto:chemchek@aol.com]
Sent: 05/23/2007 8:56 AM
To: Nancy Gregorio
Subject: Fwd: RE: Hi, Friends!

Wow... all these nice Lady friends I have and no Sex... Yet! I guess a few
Sales will be OK... for now!

Good luck w/ your Party plans!

Jerry Dee

*********************************************************************

-----Original Message-----
From: "Boman, Terri" <tboman@bamaed.ua.edu>
Subj: RE: Hi, Friends!
Date: Tue May 22, 2007 4:03 pm
Size: 8K
To: <ChemChek@aol.com>

Glad to hear things are going well! My son is also 17 and
is considering himself a senior in 3 days. He is excited to be out of
school. WE are going on a trip next week and spend some time sunning my
buns at the beach. Life is going well. I am looking forward to seeing you
at NSTA. I will recommend EDU-CHEM to everyone that I see! When do you
think Nancy will be sending me the quote? WE were thinking of purchasing
GC's with end of the year money! Great to hear from you, Terri

Terri C. Boman
Associate Director
UA/UWA In-Service Center
Office: 205.348.6951
Cell: 205.332.2842
Fax: 205.348.0992
tboman@bamaed.ua.edu

This e-mail, and any attachments thereto, is/are intended only for the
addressee(s) named herein and may contain privileged and/or confidential
information. If you are not the intended recipient of this e-mail (or the
person responsible for delivering this document to the intended recipient),
you are hereby notified that any dissemination, distribution, printing or
copying of this e-mail, and any attachment thereto, is strictly prohibited.
If you have received this e-mail in error, please respond to the individual
sending the message, and permanently delete the original and any copy of any
e-mail and printout thereof.

*********************************************************************

From: ChemChek@aol.com [mailto:ChemChek@aol.com]
Sent: Tuesday, May 22, 2007 7:53 AM
To: Boman, Terri
Subject: Re: Hi, Friends!

Hello, My Dear!

I'm glad you're moving up in the World of Alabama Education... and it seems
ol' Doctor Jerry needs to get back in touch with all his Southern Belles
again!

Maybe I can see y'all at the ASTA / Rgnl NSTA early in December... I think I can afford a Booth there!

Family life... when I'm home at least... is OK... but my boy, Thomas, is turning 17 next month and he's itching to be a NASCAR driver already... not that HE can afford the NJ Car Insurance! (and neither can his ol' man at this rate!).

Business-wise... things are a-changing at BUCK... and confidentially it may not exist in a year... but FEAR NOT! Shining Knight Jerry will always be there to protect all his Lady Loves... and you are the only one to get a Cigar Band commitment, by the way.

As you know, my associate, Nancy Gregorio and I set up a "supplemental company; EDU-CHEM Innovations, to carry some stuff that the management at BUCK was not interested in promoting... and she's made arrangements to cover the other items as well... including the HPLC, GC and a line of smaller, lighter UV-Vis Specs (same company that makes the Spec-20 replacements).

I'll aks her to forward a Quotation for you on these four (4) Air-GC systems... and they will be the SAME ones that BUCK sells (since they never really made them... just bought them and re-sold them... FYI)... and the price will be the same $4995 that BUCK used to sell them for (their prices have gone up ~$500 to try and make the profits look better for their "buyer"!).

Please, too, let anyone else you may talk to about instruments know that lil' Jerry is working with EDU-CHEM and to at least give us an opportunity to provide a Quotation (since my BUCK revenues have been dropping... and I'm still trying to keep Gwen & the Kids covered financially as best I can... so every little bit helps, as they say!). Thanks!

Be well, my special Friend... and I hope the Summer is a peaceful one for you... I've already got 4 weeks of travel planned so far... and it's just gonna keep piling up! I'll have to visit Lake Lurleen again and try not to drown this time! <yuk-yuk!>


Peace, Love & Happiness!

lil' Jerry... Cigar Band ex-Fiancee

*******************************************************************
Subj:RE: Hi, Friends!
Date:5/21/2007 11:55:12 AM Eastern Daylight Time
From:tboman@bamaed.ua.edu
To:ChemChek@aol.com
Sent from the Internet

Hi, Jerry, great to hear from you! I hope all is well with you, Veronica and your children. I am doing great. I do have a new job. I am no longer the chemistry specialist, now I am the supervisor of all three specialist – chemistry, physics and biology and a technology specialist. WE have decided to take a closer look at purchasing the Buck GC's. Could you send me a quote on 4 Buck GC's? You can send it to me electronically or fax it to the number below.

Thanks so much! Terri

Terri C. Boman
Associate Director
UA/UWA In-Service Center
Office: 205.348.6951
Cell: 205.332.2842
Fax: 205.348.0992
tboman@bamaed.ua.edu