UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GERALD J. DEMENNA, individually and
d/b/a CHEM-CHEK CONSULTING,

Plaintiffs,

– against –

BUCK SCIENTIFIC, INC., ROBERT J.
ANDERSON, ERIC ANDERSON, and
DAN WILLOUGHBY, individually and d/b/a
D&N SCIENTIFIC

Defendants

**CIVIL ACTION**

CASE NO.07-CV-6240 (LAP)

**SECOND AMENDED COMPLAINT**
**and**
**JURY DEMAND**

1.      Plaintiffs  Gerald  J.  DeMenna,  ("DeMenna")  and  Chem-Chek  Consulting

("Chem-Chek", collectively, the "Plaintiffs"), by way of complaint against Buck Scientific, Inc.

("Buck"), Robert J. Anderson ("R. Anderson"), and Eric Anderson ("E. Anderson", collectively, the

"Defendants Buck Scientific, Robert Anderson, and Eric Anderson"), respectfully states as follows:

## NATURE OF THE ACTION

2.      Plaintiffs  bring  this  action  to  obtain  equitable  and  legal  relief  and  to  secure

compensatory and punitive damages, together with, Plaintiff's costs and expenses, including

attorneys' fees, arising from Defendants Buck Scientific, Robert Anderson, and Eric Anderson's

unlawful termination of DeMenna's employment with the Defendants Buck Scientific, Robert

Anderson, and Eric Anderson, Defendants Buck Scientific, Robert Anderson, and Eric Anderson

unlawful retention of Plaintiffs' personal and business property, Defendants Buck Scientific, Robert

Anderson, and Eric Anderson unlawful appropriation and use of Plaintiffs' confidential, proprietary,

trademark, and patented information and materials, and Defendants Buck Scientific, Robert

Anderson, and Eric Anderson slanderous and libelous statements to third parties, that, among other things, has impaired Plaintiffs' reputation within the community and has interfered with his existing business relationships.

## JURISDICTION AND VENUE

3.      Jurisdiction is founded upon 28 USC 1332. The matter in controversy exceeds $75,000.00, exclusive of interests and costs and the action is between citizens of separate states.

4.      Plaintiff Gerald J. DeMenna is a citizen of the State of New York; and conducts business under the name of Chem-Chek Consulting.

5.      Defendant Buck Scientific, Inc. is, upon information and belief, a corporation organized and existing under Connecticut law, with its principal place of business located in the State of Connecticut.

6.      Defendants Robert J. Anderson and Eric Anderson are all natural persons and, upon information and belief, citizens of the State of Connecticut.

7.      Defendant Dan Willoughby, individually and doing business as D&N Scientific are, upon information and belief, citizens of the State of Ohio.

8.      Venue is proper, pursuant to 28 USC 1391(a)(2), because a substantial part of property that is the subject of this action is located within this District.

## PARTIES

9.      Plaintiff Gerald J. DeMenna is a natural person, residing in Apartment 2K of the building known as and located at 345 West 58th Street, New York, New York.

2

10.    Plaintiff holds a Ph.D. in Chemistry from the University of Ravenhurst, Texas and has been teaching chemistry at Sacred Heart University in Fairfield, Connecticut. Since 1989, Professor DeMenna has operated an analytical chemistry consulting company, known as Chem-Chek, along with other business ventures.

11.    Defendant Buck Scientific, Inc. ("Buck Scientific") is, upon information and belief, a corporation organized and existing under Connecticut law, with its principal place of business located at 58 Fort Point Street, East Norwalk, Connecticut.

12.    Buck Scientific is a manufacturer of scientific instruments that measure chemical properties, such as infrared spectroscopes; atomic absorption spectroscopes; and a reseller of gas chromatographs; liquid chromatographs; ultra violet visible spectroscopes, and fluorometers. These various instruments measure known chemical properties and can be used to identify unknown substances.

13.    Defendant Robert Anderson is a natural person, and, upon information and belief, a resident of Connecticut, with a residence at 39 Osborn Avenue, East Norwalk, Connecticut. Upon information and belief, Defendant Robert Anderson is a shareholder, officer, and director of Defendant Buck Scientific.

14.    Defendant Eric Anderson is a natural person, and, upon information and belief, a resident of Connecticut. Upon information and belief, Defendant Eric Anderson is a shareholder, officer, and director of Defendant Buck Scientific.

15.    Defendant Dan Willoughby is a natural person, and, upon information and belief, a resident of Ohio, with an address at 4930 Sharon Avenue, Columbus, OH 43214. He also conducts business as a sole proprietorship under the name D&N Scientific. Upon information and belief,

3

Defendant Dan Willoughby is an independent sales representative for Defendant Buck Scientific, among others.

## **BACKGROUND FACTS**

16.     In 1994, Professor DeMenna was awarded a Ph.D. in Chemistry from the University of Ravenhurst, Texas.  Following the award of his PhD, Professor DeMenna held various positions with several companies.  In 1989, Professor DeMenna created his own consulting firm, Chem-Chek, a sole proprietorship, with offices located in Piscataway, New Jersey.

17.     In addition to creating and validating analytical chemistry protocols, Professor DeMenna began to manufacture and market chemical compounds through Chem–Chek.  Professor DeMenna also began to actively market scientific educational materials to various schools.  As part of this educational marketing, Professor DeMenna commissioned a tie-dyed lab coat, which he has worn for all of his public appearances.  Based on nearly fifteen (15) years of continual use, the tie-dyed lab coat has become associated with Professor DeMenna.

18.     In or around 1991, Professor DeMenna was contacted by Defendant Robert Anderson, President of Defendant Buck Scientific, or its then General Manager Roy Mirchandani, to provide chemicals and analytical chemistry protocols for Buck Scientific's use.

19.     In or around 1992, Professor DeMenna entered into an independent contractor relationship with Buck Scientific, primarily as a technical consultant with an emphasis on sales and utilization of the various Buck Scientific products.  Initially, Professor DeMenna received a weekly service fee of approximately Two Hundred and Fifty (\$ 250.00) Dollars.  It was anticipated that Professor DeMenna would devote approximately twelve (12) hours a week to assisting the sales

4

representatives in marketing Buck's instruments, while the remainder of his time could be used for any other purpose, including, but not limited to, the operation of Chem–Chek, and any other business venture.

20.    As of June 2007, Professor DeMenna was devoting a minimum of forty (40) hours per week to Buck Scientific, receiving a weekly service fee of Nine Hundred and Eighty ($ 980.00) Dollars, together with one–one-hundredth (.01 %) percent of Buck Scientific's sales, paid monthly, and reimbursement of travel expenses associated with services rendered to Buck Scientific.

21.    Professor DeMenna has continued to operate Chem–Chek and to independently market scientific educational materials to various institutions.

22.    Upon information and belief, approximately thirty-five to forty (35–40 %) percent of Buck Scientific's business is generated by overseas sales.

23.    In December 2006, Professor DeMenna was contacted by a sales person at Buck Scientific about an overseas sale for which the sales person could not identify the end-user. The sale was for four (4) instruments, totaling approximately One Hundred and Thirty Thousand ($ 130,000) Dollars.

24.    The available documentation identified the end-user as Dr. Akid, located in Germany. The documents also indicated that the equipment was to be used by an unidentified university located in Dubai, in the United Arab Emirates. Because the information on the documentation was incomplete, Professor DeMenna was asked to help positively identify Dr. Akid and the ultimate end-user.

5

25.    After conducting some inquiries, Professor DeMenna determined that while Dr. Akid did maintain an office located in Germany; and, upon information and belief, Dr. Akid also had an office located in Tehran, Iran, and conducted his practice there. Additionally, research failed to locate any reference to the university in Dubai that the documentation stated was to be the ultimate end-user for the equipment.

26.    Professor DeMenna revealed the results of this research to Defendant Robert Anderson; drafting a letter to the Department of Homeland Security and the Department of Commerce regarding the shipment.

27.    Defendant Robert Anderson failed and refused to contact the Department of Homeland Security or the Department of Commerce.

28.    Subsequently, Professor DeMenna contacted the Department of Homeland Security's and the Department of Commerce's Field Offices, both located in New Haven, Connecticut.

29.    Homeland Security and Commerce Department agents visited Buck Scientific, where they conducted an investigation into the shipment. Ultimately, in or around February 1, 2007, the Department intended to place a tracking device in the equipment to make sure that the equipment was not used for improper purposes.

30.    On Monday, June 18, 2007, at 5:30 p.m., Professor DeMenna was called into the office of Defendant Robert Anderson. When Professor DeMenna arrived, Defendant Eric Anderson was also present; both Robert Anderson and Eric Anderson appeared to be agitated. There were no other Buck Scientific personnel on site at that time.

31.    Defendant Robert Anderson then informed Professor DeMenna that he was "tired of all [his] extracurricular activities," accused the Professor of "stealing from the company," and for "trying to kill the sale of Buck Scientific because you didn't want it to happen." Specifically, Professor DeMenna had supposedly diverted a prospective contract with Ohio State University to a company known as Edu-Chem Innovations, operating out of Florida.

32.    Even though Professor DeMenna attempted to explain the situation to the Defendants Buck Scientific, Robert Anderson, and Eric Anderson, they refused to listen. Professor DeMenna was told to "get the hell out of" Buck Scientific.

33.    As Professor DeMenna sought to retrieve his personal belongings, he was assaulted and physically prevented from assembling his personal property, prior to leaving Buck Scientific's property.

34.    Professor DeMenna was given an ultimatum: his personal property would be returned, when the Professor returned Buck Scientific equipment used by Professor DeMenna and other sales representatives for demonstration purposes.

35.    As both individual defendants, Robert Anderson and Eric Anderson, knew, Buck Scientific's equipment was located in three (3) separate locations, Sacred Heart University in Fairfield, CT, Professor DeMenna's personal lab facility in the Bronx, NY, and in a warehouse in Piscataway, NJ, where the other sales agents had access to the equipment.

36.    Forced to leave his personal property, Professor DeMenna was also forced to leave his automobile. His keys were taken by Defendant Robert Anderson and he was given the keys to the company truck, notwithstanding that he was no longer employed by Buck Scientific.

7

37.     On Tuesday June 19, 2007, Professor DeMenna collected the various equipment, using Buck Scientific's truck.  Accompanied by a Norwalk Police Officer, Professor DeMenna returned the equipment mandated by the Defendants Buck Scientific, Robert Anderson, and Eric Anderson to secure the release of his personal property.

38.     Following initial reluctance, the parties exchanged property, under the police officer's supervision.  Both parties executed lists prepared by Professor DeMenna that set forth the property exchanged.

39.     Despite agreeing to return all of Professor DeMenna's personal property, Defendants Buck Scientific, Robert Anderson, and Eric Anderson retained Professor DeMenna's 2GB memory card from the company issued TREO cellular telephone.  The memory card contains the Professor's contacts information, personal and professional documents, scheduling calendar of personal and professional commitments, and personal pictures.

40.     Following the termination of Professor DeMenna, the Defendants Buck Scientific, Robert Anderson, and Eric Anderson transmitted unsolicited correspondence to members of the industry, stating that Professor DeMenna had been terminated by Buck Scientific for diversion of customers and theft.

41.     Following the return of Professor DeMenna's personal computers, he noticed that the programs and data had been accessed.  Although Professor could not immediately ascertain whether the data had been copied to Defendants Buck Scientific, Robert Anderson, and Eric Anderson's computers, the Defendants Buck Scientific, Robert Anderson, and Eric Anderson had deleted several program files and their associated data files.

8

42.    Further, Defendants Buck Scientific, Robert Anderson, and Eric Anderson had transferred Professor DeMenna's personal electronic mail to Defendant Eric Anderson. Said transfers had been conducted on Monday June 18, 2007 following Defendants Buck Scientific, Robert Anderson, and Eric Anderson' forcible retainer of the Professor's personal computers.

43.    On Tuesday, June 26, 2007, Professor DeMenna received a phone call from MeasureNet, with whom Professor DeMenna has a two (2) year Consulting Agreement. Based on the unsolicited correspondence by the Defendants Buck Scientific, Robert Anderson, and Eric Anderson, accusing the Professor of stealing, MeasureNet now seeks to re-negotiate that Consulting Agreement, to the Plaintiff's detriment.

44.    Subsequently, Professor DeMenna was informed that Defendant Willoughby had defamed Professor DeMenna's reputation and had informed persons within the analytical community that they had "better drop Jerry DeMenna like a hot potato."

45.    At the time Professor DeMenna was terminated by Defendants Buck Scientific, Robert Anderson and Eric Anderson, Professor DeMenna had unreimbursed expenses and unpaid commissions which Defendants have failed and refused to pay.

46.    Defendants Buck Scientific, Robert Anderson and Eric Anderson have failed and refused to return Professor DeMenna's personal property, including but not limited to personal photographs, books, papers, documents pertaining to Professor DeMenna's work for customers other than said Defendants, chemicals and supplies, equipment, and personal memorabilia which said Defendants wrongfully and forcibly retained when they terminated Professor DeMenna's services.

9

## AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION
*(Wrongful Termination)*

47.     Plaintiff repeats and realleges each and every allegation contained in paragraphs one through forty-six (¶¶ 1 – 46) above, as if they were set forth at length herein.

48.     Plaintiff was employed by Defendant Buck Scientific as an independent contractor, pursuant to the terms of an oral contract between Plaintiff and Defendant, by and through its President, Defendant Robert Anderson.

49.     Plaintiff discovered the existence of a shipment of scientific equipment to, upon information and belief, a fraudulent end-user.

50.     Plaintiff believed such shipment to violate federal law governing and restricting the exportation of such scientific instruments.

51.     Plaintiff reported his suspicions to Defendant Robert Anderson, who failed and refused to take any action or conduct any investigation into Plaintiff's suspicions.

52.     Plaintiff reported his suspicions to the Department of Homeland Security and Department of Commerce, resulting in a federal investigation and monitoring of the suspicious shipment.

53.     Subsequent to the federal investigation, Defendants Buck Scientific, Robert Anderson, and Eric Anderson terminated Plaintiff's employment.

54.     Upon information and belief, Defendants Buck Scientific, Robert Anderson, and Eric Anderson will assert that Plaintiff was terminated for diverting corporate opportunities and for theft of corporate property.

P:\DeMenna, Jerry\Pleadings\Second Amended Complaint v Buck Scientific et al.doc

55.    Upon information and belief, Defendants Buck Scientific, Robert Anderson, and Eric Anderson's purported reasons are a pretext and Plaintiff was terminated in retaliation for reporting the suspicious shipment to the Department of Homeland Security and Department of Commerce.

56.    WHEREFORE, Plaintiff demands judgment against the Defendants Buck Scientific, Robert Anderson, and Eric Anderson in an amount to be determined at trial of this action, plus interest, costs, and expenses, including attorneys' fees.

### AS AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION
*(Libel and Slander)*

57.    Plaintiff repeats and realleges each and every allegation contained in paragraphs one through fifty-six ($\P\P$ 1 – 56) above, as if they were set forth at length herein.

58.    On or about June 18, 2007, the Defendants Buck Scientific, Robert Anderson, and Eric Anderson voluntarily circulated correspondence setting forth the purported reason for Buck Scientific's termination of the Plaintiff's services.

59.    By correspondence dated May 21, 2007, Defendants Buck Scientific and Robert Anderson accused Professor DeMenna of theft.  Specifically the correspondence stated:

> It has come to my attention that an order for 80 Jenway units for Ohio State University was given to you from a seminar given by Jerry DeMenna while working for Buck Scientific.  Clearly we paid dearly for this lead and it was transferred to you to book the order, **this is theft!**

> It has also come to my attention that many items shipped to customers and billed by you came directly out of the Buck Scientific stock room.  I'm sure Jerry's "lab" in the Bronx is full of stolen goods.

60.    The correspondence was sent on Defendant Buck Scientific's letterhead and signed by Defendant Robert Anderson.

11

61.     By electronic mail message, Defendant Eric Anderson repeated the slanderous allegation that Professor DeMenna had stolen form Buck Scientific. Specifically, on June 19, 2007, Defendant stated:

> As you may or may not have heard Jerry DeMenna has been terminated for reasons I cannot discuss because there may be legal action in the near future.

> What I can say is sales leads have been redirected from Buck Scientific marketing efforts to the Edu-Chem Innovations sales department. As a result Buck Scientific and the Sales reps were robbed of thousands of dollars in sales. In one case alone the sale was for over $120,000.00!

62.     The correspondence was sent from Defendant Eric Anderson's e-mail address to twelve (12) primary recipients with three (3) courtesy copies and indicated that it originated from "Eric Anderson, Dir. Sales & Marketing, Buck Scientific."

63.     Upon information and belief, Defendants Buck Scientific, Robert Anderson, and Eric Anderson did not limit their disparaging remarks to the above examples.

64.     The statements made by the Defendants Buck Scientific, Robert Anderson, and Eric Anderson are false.

65.     The Defendants Buck Scientific, Robert Anderson, and Eric Anderson know that the statements of the correspondence are false.

66.     As a direct result of the statements made by the Defendants Buck Scientific, Robert Anderson, and Eric Anderson, contained within the June 18, 2007 correspondence, Plaintiff has suffered injury, including, but not limited to, the attempted re-negotiation of a written contract between Plaintiff and MeasureNet.

12

67.     WHEREFORE, Plaintiff demands judgment against the Defendants Buck Scientific, Robert Anderson, and Eric Anderson in an amount to be determined at trial of this action, plus interest, costs, and expenses, including attorneys' fees.

### AS AND FOR PLAINTIFF'S THIRD CAUSE OF ACTION
*(Tortious Interference with Contract and Business Relations)*

68.     Plaintiff repeats and realleges each and every allegation contained in paragraphs one through sixty-seven (¶¶ 1 – 67) above, as if they were set forth at length herein.

69.     Plaintiff is an independent contractor providing analytical chemical services to various parties, including without limitation MeasureNet.

70.     Defendants Buck Scientific, Robert Anderson, and Eric Anderson are aware of Plaintiff's contracts to provide independent consulting services to various parties, including without limitation MeasureNet.

71.     By deliberately circulating false and disparaging comments concerning the Plaintiff, Defendants Buck Scientific, Robert Anderson, and Eric Anderson have sought the termination of Plaintiff's contracts and/or agreements to provide independent consulting services to various parties, including without limitation MeasureNet.

72.     As a direct result of the statements made by the Defendants Buck Scientific, Robert Anderson, and Eric Anderson, Plaintiff has suffered injury, including, but not limited to, the loss of previously negotiated economic benefits, including but not limited to equity and increased earnings associated with Plaintiff's provision of independent consulting services to various parties, including without limitation MeasureNet.

73.    WHEREFORE, Plaintiff demands judgment against the Defendants Buck Scientific, Robert Anderson, and Eric Anderson in an amount to be determined at trial of this action, plus interest, costs, and expenses, including attorneys' fees.

### AS AND FOR PLAINTIFF'S FOURTH CAUSE OF ACTION
*(Unfair and/or Unlawful Trade Practices)*

74.    Plaintiff repeats and realleges each and every allegation contained in paragraphs one through seventy-three (¶¶ 1 – 73) above, as if they were set forth at length herein.

75.    Plaintiff is an independent contractor providing analytical chemical services to various parties, including without limitation MeasureNet.

76.    Defendants Buck Scientific, Robert Anderson, and Eric Anderson are aware of Plaintiff's contracts to provide independent consulting services to various parties, including without limitation MeasureNet.

77.    Defendants Buck Scientific, Robert Anderson, and Eric Anderson have threatened various parties, including, but not limited to MeasureNet, with a complete bar to any business relationship with the Defendants Buck Scientific, Robert Anderson, and Eric Anderson if those parties continue to engage Plaintiff to perform consulting services for those parties.

78.    Such activities are unlawful.

79.    As a direct result of Defendants Buck Scientific, Robert Anderson, and Eric Anderson threats, Plaintiff has suffered injury, including, but not limited to, the loss of business opportunities, including without limitation, opportunities to provide additional consulting services to MeasureNet.

14

80. WHEREFORE, Plaintiff demands judgment against the Defendants Buck Scientific, Robert Anderson, and Eric Anderson in an amount to be determined at trial of this action, plus interest, costs, and expenses, including attorneys' fees.

### AS AND FOR PLAINTIFF'S FIFTH CAUSE OF ACTION
*(Conversion)*

81. Plaintiff repeats and realleges each and every allegation contained in paragraphs one through eighty (¶¶ 1 – 80) above, as if they were set forth at length herein.

82. Plaintiff is the owner of certain proprietary and confidential materials and information.

83. Defendants Buck Scientific, Robert Anderson, and Eric Anderson have, through pretext, taken possession of Plaintiff's property, with the intention to permanently deprive Plaintiff of the benefits of ownership

84. WHEREFORE, Plaintiff demands judgment against the Defendants Buck Scientific, Robert Anderson, and Eric Anderson in an amount to be determined at trial of this action, plus interest, costs, and expenses, including attorneys' fees.

### AS AND FOR PLAINTIFF'S SIXTH CAUSE OF ACTION
*(Assault and Battery)*

85. Plaintiff repeats and realleges each and every allegation contained in paragraphs one through eighty-four (¶¶ 1 – 84) above, as if they were set forth at length herein.

86. Defendants Buck Scientific, Robert Anderson, and Eric Anderson physically assaulted Plaintiff causing him to fear bodily injury in order to compel his departure form the premises of Buck Scientific, in order to retain his personal property.

15

87.     Defendants Robert Anderson and Eric Anderson both made unwanted physical contact with the plaintiff.

88.     Such physical contact was made with the intent to cause bodily injury to the Plaintiff.

89.     Such physical contact did, in fact, cause bodily injury to the Plaintiff.

90.     WHEREFORE, Plaintiff demands judgment against the Defendants Buck Scientific, Robert Anderson, and Eric Anderson in an amount to be determined at trial of this action, plus interest, costs, and expenses, including attorneys' fees.

## AS AND FOR PLAINTIFF'S SEVENTH CAUSE OF ACTION
*(Defamation)*

91.     Plaintiff repeats and realleges each and every allegation contained in paragraphs one through ninety (¶¶ 1 – 90) above, as if they were set forth at length herein.

92.     At all times relevant hereto, Defendant Dan Willoughby was an independent sales agent for various scientific instrument companies, including Buck.

93.     Subsequent to June 18, 2007, Defendant Dan Willoughby began to disparage Professor DeMenna.

94.     In conversations with Bob Voorhees of MeasureNet, Defendant Willoughby stated that if MeasureNet continued to work with Professor DeMenna, he would tell Defendant Robert Anderson to stop working with MeasureNet and to terminate the Buck Scientific contracts of the independent sales representatives working with MeasureNet. Specifically, Defendant Willoughby stated that he was "bad mouthing Jerry DeMenna every chance" that he could and that "if you want to protect your reputation you better drop Jerry DeMenna like a hot potato."

16

95.     Upon information and belief, Defendant Dan Willoughby has made the above statements or other statements substantially similar to them, including repeating the defamatory statements communicated by Defendants Buck Scientific, Robert Anderson, and Eric Anderson, to other persons including, without limitation, other sales representatives, within the analytical community.

96.     The statements made by the Defendant are false.

97.     The Defendant knew or should have known that the statements were false when he made them.

98.     As a direct result of the statements made by the Defendant to Bob Voorhees of MeasureNet, Plaintiff has suffered injury, including, but not limited to, the attempted re-negotiation of a written contract between Plaintiff and MeasureNet.

99.     WHEREFORE, Plaintiff demands judgment against the Defendant Dan Willoughby in an amount to be determined at trial of this action, plus interest, costs, and expenses, including attorneys' fees.

### AS AND FOR PLAINTIFF'S EIGHTH CAUSE OF ACTION
*(Tortious Interference with Contract and Business Relations)*

100.    Plaintiff repeats and realleges each and every allegation contained in paragraphs one through ninety-nine (¶¶ 1 – 99) above, as if they were set forth at length herein.

101.    Plaintiff is an independent contractor providing analytical chemical services to various parties, including without limitation MeasureNet.

102.    Defendant Dan Willoughby is aware of Plaintiff's contracts to provide independent consulting services to various parties, including without limitation MeasureNet.

103.    By deliberately circulating false and disparaging comments concerning the Plaintiff, Defendant Willoughby has sought the termination of Plaintiff's contracts and/or agreements to provide independent consulting services to various parties, including without limitation MeasureNet.

104.    As a direct result of the statements made by Defendant Willoughby, Plaintiff has suffered injury, including, but not limited to, the loss of previously negotiated economic benefits, including but not limited to equity and increased earnings associated with Plaintiff's provision of independent consulting services to various parties, including without limitation MeasureNet.

105.    WHEREFORE, Plaintiff demands judgment against Defendant Willoughby in an amount to be determined at trial of this action, plus interest, costs, and expenses, including attorneys' fees.

## AS AND FOR PLAINTIFF'S NINTH CAUSE OF ACTION
### *(Injunctive Relief)*

106.    Plaintiff repeats and realleges each and every allegation contained in paragraphs one through one hundred five (¶¶ 1 – 105) above, as if they were set forth at length herein.

107.    Defendants Buck Scientific, Robert Anderson, and Eric Anderson are in possession of Plaintiff's proprietary and confidential material unlawfully obtained from Plaintiff's personal computers on or about June 18, 2007.

108.    Such information is essential to the conduct and operation of Professor DeMenna's consulting business.

18

109.    Upon information and belief, Defendants Buck Scientific, Robert Anderson, and Eric Anderson have used Plaintiff's contact information to target Plaintiff's customers with their slanderous and libelous allegations concerning the purported reason for the termination of his relationship with Buck Scientific.

110.    Upon information and belief, Defendants Buck Scientific, Robert Anderson, and Eric Anderson, or some other person acting at their direction or on their behalf, will seek to utilize the unlawfully obtained information to further the Defendants Buck Scientific, Robert Anderson, and Eric Anderson's interests at Plaintiff's expense.

111.    Plaintiff lacks an adequate remedy at law.

112.    Plaintiff requests that this Court permanently enjoin and prohibit Defendants Buck Scientific, Robert Anderson, and Eric Anderson from using the proprietary and confidential materials obtained by the Defendants Buck Scientific, Robert Anderson, and Eric Anderson from Plaintiff's personal computers, or from any other source.

## AS AND FOR PLAINTIFF'S TENTH CAUSE OF ACTION
### *(Invasion of Privacy)*

113.    Plaintiff repeats and realleges each and every allegation contained in paragraphs one through one hundred twelve (¶¶ 1 – 112) above, as if they were set forth at length herein.

114.    Defendants Buck Scientific, Robert Anderson and Eric Anderson searched and destroyed Plaintiff's personal possessions, including his personal papers, photographs, the contents of two personal laptop computers, equipment and supplies, documents pertaining to Plaintiff's work for customers other than said Defendants and memorabilia which said Defendants unlawfully retained by force when they terminated Plaintiff's services. This conduct was without the consent,

19

permission or authority of Plaintiff and notwithstanding his specific direction that said laptop held private, personal and confidential information and data.

115.    Plaintiff's possessions were kept in the cubicle and desk designated for his sole and exclusive use at Buck Scientific's offices.

116.    Defendants Buck Scientific, Robert Anderson and Eric Anderson illegally made and retained copies and/or downloaded some of the contents of Plaintiff's personal laptop computers.

117.    During their unauthorized search of Plaintiff's computers, Defendants Buck Scientific, Robert Anderson and Eric Anderson improperly deleted certain programs and associated laboratory data belonging to Plaintiff.

118.    Defendants Buck Scientific, Robert Anderson and Eric Anderson also improperly and illegally used one of Plaintiff's laptop computers and his stored account information on said computer to access Plaintiff's AOL internet services account without permission, viewing and forwarding to themselves e-mails and other documents stored on that account.

119.    Defendants Buck Scientific, Robert Anderson and Eric Anderson did not have Plaintiff's permission, consent or authority for their search of his possessions or their accessing of his computers and AOL account.

120.    Defendants Buck Scientific, Robert Anderson and Eric Anderson never notified Plaintiff that they reserved any right to search the personal possessions of their employees or contractors.

121.    As a direct result of the actions of Defendants Buck Scientific, Robert Anderson and Eric Anderson, Plaintiff has suffered damages including, but not limited to, emotional distress,

disclosure of private and confidential information, loss of valuable scientific data and invasion of his privacy.

122.    WHEREFORE, Plaintiff demands judgment against the Defendants Buck Scientific, Robert Anderson, and Eric Anderson in an amount to be determined at trial of this action, plus interest, costs, and expenses, including attorneys' fees.

### AS AND FOR PLAINTIFF'S ELEVENTH CAUSE OF ACTION
*(Computer Trespass)*

123.    Plaintiff repeats and realleges each and every allegation contained in paragraphs one through one hundred twenty-two (¶¶ 1 – 122) above, as if they were set forth at length herein.

124.    Defendants Buck Scientific, Robert Anderson and Eric Anderson searched, viewed and copied the contents of two laptop computers belonging personally to Plaintiff without Plaintiff's permission.

125.    Defendants Buck Scientific, Robert Anderson and Eric Anderson used Plaintiff's personal computer and stored account information on said computer to access, view and forward to themselves e-mails and documents stored on Plaintiff's AOL internet services account without Plaintiff's permission.

126.    Defendants Buck Scientific, Robert Anderson and Eric Anderson made and retained copies of most or all of the contents of Plaintiff's personal laptop computers and downloaded same to their own computers without permission, consent or authority of Plaintiff.

127.    Defendants Buck Scientific, Robert Anderson and Eric Anderson illegally deleted certain scientific programs and associated laboratory data belonging to Plaintiffs from Plaintiff's computer without Plaintiff's permission.

21

128.    Defendants Buck Scientific, Robert Anderson and Eric Anderson introduced or caused to be introduced a virus or malicious code onto Plaintiff's personal computer during their unauthorized use of said computer.

129.    The actions of Defendants Buck Scientific, Robert Anderson and Eric Anderson violated C.G.S.A. § 53a-251, which states, *inter alia*:

> (a) Defined. A person commits computer crime when he violates any of the provisions of this section.
>
> (b) Unauthorized access to a computer system. (1) A person is guilty of the computer crime of unauthorized access to a computer system when, knowing that he is not authorized to do so, he accesses or causes to be accessed any computer system without authorization.
> . . . .
> (c) Theft of computer services. A person is guilty of the computer crime of theft of computer services when he accesses or causes to be accessed or otherwise uses or causes to be used a computer system with the intent to obtain unauthorized computer services.
> . . . .
> (e) Misuse of computer system information. A person is guilty of the computer crime of misuse of computer system information when: (1) As a result of his accessing or causing to be accessed a computer system, he intentionally makes or causes to be made an unauthorized display, use, disclosure or copy, in any form, of data residing in, communicated by or produced by a computer system; or (2) he intentionally or recklessly and without authorization (A) alters, deletes, tampers with, damages, destroys or takes data intended for use by a computer system, whether residing within or external to a computer system, or (B) intercepts or adds data to data residing within a computer system; or (3) he knowingly receives or retains data obtained in violation of subdivision (1) or (2) of this subsection; or (4) he uses or discloses any data he knows or believes was obtained in violation of subdivision (1) or (2) of this subsection.

130.    As a direct result of the actions of Defendants Buck Scientific, Robert Anderson and Eric Anderson, Plaintiff has suffered damages including, but not limited to, emotional distress, loss

22

of valuable scientific data, disclosure of private and confidential information, corruption of his computer software and invasion of privacy.

131.    WHEREFORE, Plaintiff demands judgment against the Defendants Buck Scientific, Robert Anderson, and Eric Anderson in an amount to be determined at trial of this action, including treble damages, plus interest, costs, and expenses, including attorneys' fees.

## AS AND FOR PLAINTIFF'S TWELFTH CAUSE OF ACTION
*(Wrongful Computer Access Causing Damage)*

132.    Plaintiff repeats and realleges each and every allegation contained in paragraphs one through one hundred thirty-one (¶¶ 1 – 129) above, as if they were set forth at length herein.

133.    Defendants Buck Scientific, Robert Anderson and Eric Anderson used Plaintiff's personal computer and stored account information on said computer to access, view and forward to themselves e-mails and documents stored on Plaintiff's AOL internet services account without Plaintiff's permission.

134.    Defendants Buck Scientific, Robert Anderson and Eric Anderson deleted certain scientific programs and associated laboratory data from Plaintiff's personal computers without his permission.

135.    Defendants Buck Scientific, Robert Anderson and Eric Anderson introduced or caused to be introduced a virus or malicious code onto Plaintiff's personal computer during their unauthorized access to said computer.

136.    The actions of Defendants Buck Scientific, Robert Anderson and Eric Anderson were committed in order to wrongfully interfere with Plaintiff's contract and business relations, to invade

his privacy, to misappropriate and/or destroy valuable scientific data and business information, and

to cause him distress.

137.    As a direct result of the actions of Defendants Buck Scientific, Robert Anderson and

Eric Anderson, Plaintiff suffered damages including, but not limited to, loss of valuable scientific

data, emotional distress, disclosure of private and confidential information, corruption of his

computer software and invasion of privacy.

138.    The costs of assessing, responding to, repairing and recovering from the damage

caused by Defendants Buck Scientific, Robert Anderson and Eric Anderson greatly exceeds Five

Thousand ($5,000.00) Dollars.

139.    The actions of Defendants Buck Scientific, Robert Anderson and Eric Anderson

violated 18 U.S.C.A. § 1030, which states, *inter alia*:

> (a) Whoever--
> . . . .
> (5)(A) . . . . (ii) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage;  or
>
> (iii) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage;  and
>
> (B) by conduct described in clause (i), (ii), or (iii) of subparagraph (A), caused (or, in the case of an attempted offense, would, if completed, have caused)--
>
> (i) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;
> . . . .
> (e) As used in this section--
> . . . .

24

(2) the term "protected computer" means a computer--

. . . .

(B) which is used in interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States;

. . . .

(8) the term "damage" means any impairment to the integrity or availability of data, a program, a system, or information;

. . . .

(11) the term "loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service . . . .

140.    WHEREFORE, Plaintiff demands judgment against the Defendants Buck Scientific, Robert Anderson, and Eric Anderson in an amount to be determined at trial of this action, plus interest, costs, and expenses, including attorneys' fees.

## AS AND FOR PLAINTIFF'S THIRTEENTH CAUSE OF ACTION
*(Breach of Contract)*

141.    Plaintiff repeats and realleges each and every allegation contained in paragraphs one through one hundred forty (¶¶ 1 – 140) above, as if they were set forth at length herein.

142.    Defendants Buck Scientific, Robert Anderson and Eric Anderson have failed and refused to pay Professor DeMenna for reasonable and necessary travel and living expenses he incurred while performing his duties for said Defendants as directed by them.

143.    Defendants Buck Scientific, Robert Anderson and Eric Anderson have failed and refused to pay Professor DeMenna agreed sales commissions which he earned in June 2007, believed to total at least Three Thousand Five Hundred ($3,500.00) Dollars.

25

144.    As a direct result of Defendants Buck Scientific, Robert Anderson and Eric Anderson's wrongful and unjustified refusal to pay said amounts due and owing to Professor DeMenna, Professor DeMenna has suffered damages.

145.    WHEREFORE, Plaintiff demands judgment against the Defendants Buck Scientific, Robert Anderson, and Eric Anderson in an amount to be determined at trial of this action, plus interest, costs, and expenses, including attorneys' fees.

### AS AND FOR PLAINTIFF'S FOURTEENTH CAUSE OF ACTION
*(Replevin)*

146.    Plaintiff repeats and realleges each and every allegation contained in paragraphs one through one hundred forty-five (¶¶ 1 – 145) above, as if they were set forth at length herein.

147.    Defendants Buck Scientific, Robert Anderson and Eric Anderson wrongfully and forcibly prevented Professor DeMenna from taking his personal property, including but not limited to personal photographs, books, papers, documents pertaining to Professor DeMenna's work for customers other than said Defendants, chemicals and supplies, equipment, and personal memorabilia, from their offices when they terminated Professor DeMenna's services.

148.    Defendants Buck Scientific, Robert Anderson and Eric Anderson have failed and refused to return said personal property despite repeated demands.

149.    Defendants Buck Scientific, Robert Anderson and Eric Anderson have no right to retain or possess said personal property, which was purchased by and/or created by Professor DeMenna and which belongs to him.

150.    Plaintiff lacks an adequate remedy at law.

26

151.    WHEREFORE, Plaintiff requests that this Court order the Defendants Buck

Scientific, Robert Anderson, and Eric Anderson to return his personal property.

## TRIAL BY JURY

Pursuant to FRCP 38(b), Plaintiffs hereby demand trial by jury of all counts herein.

Dated:    December 6, 2007
          Englewood Cliffs, New Jersey

FISCHER PORTER & THOMAS, P.C.
Attorneys for Plaintiff
*Gerald J. DeMenna, Individually, and
d/b/a Chem-Chek Consulting,*

By: _____
        Arthur L. Porter, Jr. (AP 2322)
440 Sylvan Avenue, Suite 130
Englewood Cliffs, New Jersey  07632-2700
Telephone:    (201) 569 – 5959
Facsimile:    (201) 871 - 4544

P:\DeMenna, Jerry\Pleadings\Second Amended Complaint v Buck Scientific et al.doc